# SECOND DISTRICT, 1895.

### C. H. SILLIMAN v. CAROLINE THORNTON ET AL.
#### No. 1754.

**1. Outstanding Title.**—Where the children of a deceased person brought suit to recover the certificate by virtue of which the land in controversy was subsequently located, and judgment was rendered dismissing their cause of action, this did not constitute an outstanding title in the defendant in that suit as against the vendee of the widow of such deceased person, she not having been a party to that proceeding.

**2. Laws of Another State—Evidence.**—Where there is no evidence to show what the laws of another State are in regard to the title of property acquired during marriage, the presumption obtains that they are the same as in this State.

**3. Burden of Proof—Defensive Matter.**—It is not necessary for the plaintiff, claiming property through a widow who inherited it from her husband, to prove that its equivalent had not been set aside to her. Such matter would be defensive, and the burden to establish it would rest upon the defendant.

APPEAL from Parker. Tried below before Hon. J. W. PATTERSON.

*C. Von Carlowitz,* for appellant, cited 2 Chitty's Blackst. (1870), 129; 4 Kent's Com. (11 Comstock ed., 1867), p. 34, note 3; 5 Am. and Eng. Encyc. of Law, 884, note 3; Bish. on Married Women (1873), p. 245; Domat's Civ. Law (Cushing's ed., 1850), 2880; Sayles' Early Laws, art. 118, secs. 6, 7; Id., art. 124; Carroll v. Carroll, 20 Texas, 731–744; Bradshaw v. Mayfield, 18 Texas, 28, 29.

*George A. McCall,* for appellees, cited Randall v. Burtis, 57 Texas, 361; James v. James, 81 Texas, 381; Porchelor v. Bronson, 50 Texas, 561; Bradshaw v. Mayfield, 18 Texas, 21; Hill v. McDermott, Dall., 421, 424; Huff v. Folger, Dall., 531; Ennis v. Smith, 14 How., 425; Abb. Trial Ev., p. 85, sec. 23.

TARLTON, CHIEF JUSTICE.—In this suit of trespass to try title, appellees, as plaintiffs, recovered from the appellant, as defendant, an undivided interest of three-fifths in a tract of 640 acres situated in Erath and Palo Pinto counties, patented to the heirs of William H. Eggleston by virtue of Toby scrip number 177.

The conclusions of fact by the trial judge are adopted by us, substantially as follows:

On July 11, 1868, the land in controversy was patented to the heirs of W. H. Eggleston, by virtue of the land scrip above mentioned. On February 1, 1837, the scrip number 177 was duly and legally transferred and delivered by Thomas Toby to W. H. Eggleston. Eggleston died intestate on December 4, 1839. He was at that date, and had been for several years before, a resident of the State of Mississippi.

He left surviving him his widow, Ann L. Eggleston, and the following children: Imogene E. Eggleston, W. C., H. P., and Dora Eggleston. Imogene afterwards married one Sleeper. In 1863, W. C., and H. P. Eggleston died without issue.

January 3, 1853, Ann L. Eggleston duly and legally transferred and delivered scrip number 177 to William Preston. The scrip, with transfers indorsed, was filed in the General Land Office of Texas prior to the issuance of the patent (July 11, 1868). A duly certified copy from the Land Office of the scrip and the indorsed transfers was duly recorded in Erath County on February 1, 1870, and in Palo Pinto County, January 4, 1870.

Under the laws of the State of Mississippi, upon the death of W. H. Eggleston, his surviving wife, Ann L. Eggleston, inherited one-fifth of his personal estate, and his four children the remainder; that is, his wife inherited a child's part. Under the laws of that State, also, when W. C. and H. P. Eggleston died without issue, in 1863 their surviving sisters, Imogene E. Sleeper and Dora Eggleston, inherited their entire estate. Under a statute of the State of Mississippi, the surviving wife is and was at the several dates above mentioned, entitled to dower out of the estate of her deceased husband. Ann L. Eggleston was the wife of W. H. Eggleston on February 1, 1837, when the scrip number 177 was transferred to him.

December 21, 1870, William Preston conveyed the land in controversy to the plaintiff Caroline H. Thornton. In June, 1884, Imogene E. Sleeper and Dora Eggleston conveyed the land in controversy to the defendant, C. H. Silliman.

*Opinion.*—It appears that in 1858 the children of William H. Eggleston brought suit in a District Court in New Orleans against Levy & Simpson for a number of certificates, including the one by virtue of which the land in controversy was subsequently located. Levy & Simpson disclaimed, and alleged ownership in G. W. Denton, for whom they held the certificates. Denton was made a party to the proceeding, and appeared, denying plaintiff's right to recover. Judgment was rendered in that proceeding dismissing the plaintiffs' cause of action. It is contended that this judgment placed title in G. W. Denton, which, outstanding, should defeat the plaintiffs' action.

The plaintiff Caroline Thornton recovered in this suit by virtue of the conveyance from Ann L. Eggleston, the widow of William H. Eggleston. Mrs. Eggleston was no party to the proceeding in New Orleans, nor was her title in any sense involved in that proceeding. We are at a loss to perceive how any interest of a different character from another source, which may by this proceeding have been vested in Denton, could constitute an outstanding title against one who, as in this case appellee Caroline Thornton, claimed from the widow of Eggleston, an entire stranger in the proceeding. Besides, it will be observed that the interest of the children of Eggleston alone involved in that proceeding was in this case recognized as in the appellant, as having passed to him from Imogene Sleeper and Dora Eggleston, daughters of William H. Eggleston, and heirs of his deceased children. In other words, the appellant himself has been held to be invested with this so-called outstanding title, by the judgment from which he appeals. He is in no condition to complain of this error (if such it was), since he is its beneficiary.

The defendant introduced the laws of the State of Mississippi, showing that *by statute* the dower system prevailed in that State in 1837, when the certificate was transferred to William H. Eggleston. He also introduced the laws of that State, showing, as applied to the facts of this case, that upon the death of William H. Eggleston, his surviving wife inherited one-fifth of his personal estate, and his surviving four children each one-fifth of that estate. He introduced, however, no evidence showing what system of laws in that State fixed the status of property acquired during marriage. In other words, he failed to show that the common law system was in force in that State with reference to the acquisition of property.

Such being the condition of the testimony, the trial court held, that as there was no evidence showing what law was in force in Mississippi in regard to the title of property acquired during marriage, the presumption must obtain that the same system of law on that subject prevailed in that jurisdiction as in this; and that, as the community system was in force in Texas, title to one-half of this certificate (personal property) vested in the wife Ann L. Eggleston, and title to the remaining half vested in the husband W. H. Eggleston; that as, under the laws of Mississippi (introduced in this respect in evidence) the wife inher-

ited a child's part (one-fifth in this instance), and as the remaining four children (whose interests had been acquired by the appellant) inherited each an interest of one-fifth, the property represented by the certificate should be apportioned among the contesting parties, six-tenths or three-fifths to the appellees, representatives of the wife Ann L. Eggleston, and four tenths or two-fifths to the appellant, representing the four children.

This conclusion we approve as correct. As it does not appear that the law of Mississippi with reference to the title of property acquired during marriage was different from that which prevailed in Texas at the date of the transfer of this certificate to William H. Eggleston, it must be presumed to have been the same. Hilburne v. Harris, 2 Texas Civ. App., 398, and the authorities there cited. The evidence that *by statute* the dower system was recognized in Mississippi does not affect the application of this presumption. Whether the Legislature will by statute recognize the dower system with reference to descent, and the community system with reference to the acquisition of property, is a matter left to its discretion.

It will be noted that this record does not show that the dower system prevailed in Mississippi because it was a feature of the common law, and that system there prevailed, but because it was recognized by statute in that State. We see nothing necessarily incompatible in a concurrent recognition by the laws of a State of the community system and of the dower feature. This feature has even now a quasi recognition in that provision of our law by which, at the husband's death, the wife inherits one-third of his separate personal estate. Sayles' Civ. Stats., art. 1646. Indeed, our attention is called by the appellant to the fact, that by an act adopted January 26, 1839, the widow's dower was recognized in Texas. If so, it is nevertheless undoubted that at that date the community system was also in force in Texas, and that it has ever since prevailed. With reference to marital rights, the common law has never prevailed in this State. So we are told by our Supreme Court, through Chief Justice Hemphill, a jurist to be admired alike for the soundness of his conclusions and for the peculiar felicity of the diction in which those conclusions are expressed. Bradshaw v. Mayfield, 18 Texas, 30. The laws of Spain were in force in Texas until 1840. Carroll v. Carroll, 20 Texas, 742. From these laws our community system was derived. Id., 747. It has been engrafted upon our statutes, and is there perpetuated.

We must overrule the final complaint, that the plaintiff Mrs. Thornton, before being entitled to recover a one-fifth interest inherited by Mrs. Eggleston from her husband, should have proved that the equivalent of this interest had not been set aside to her. Such matter, we think, would be defensive, the burden to establish which would rest upon the appellant. The judgment is affirmed.

*Affirmed.*

Delivered April 6, 1895.